**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| JOHN E. SHARKEY | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 06-109 (JAP) |
| | : | |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| Defendant. | : | |
| | : | |

Appearances:

CHRISTOPHER P. GARGANO, ESQ.
Christopher P. Gargano, PC
A Professional Corporation
130 Central Avenue
Newark, NJ 07306
        Attorney for Plaintiff

CHRISTOPHER J. CHRISTIE
United States Attorney
MARLA PIAZZA SIEGEL
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
        Attorney for Defendant

PISANO, District Judge:

Before the Court is John E. Sharkey's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and renders its decision without oral argument. *See* Fed. R. Civ. P. 78. For the reasons expressed below, the Court finds that the record provides substantial evidence supporting the Commissioner's decision that Plaintiff was not disabled. Accordingly, the Court affirms.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed an application for benefits on June 16, 2003, alleging disability since November 1, 2002, due to Hepatitis C, edema in both legs, and depression. His claim was denied initially and again on reconsideration. Plaintiff filed a request for a hearing before an administrative law judge. A hearing was held on April 26, 2005, before Administrative Law Judge Richard L. De Steno ("ALJ"). At counsel's request, the record remained open until May 17, 2005, for the submission of medical records. The ALJ issued a decision on August 16, 2005, denying Plaintiff's application. Plaintiff then filed an appeal of the ALJ's decision with the Social Security Appeals Council ("Appeals Council"). On November 18, 2005, the Appeals Council denied the appeal, making the ALJ's decision the Commissioner's final decision on the issue of Plaintiff's request for benefits. Plaintiff then filed this action challenging the Commissioner's final decision.

**B. Factual History**

Plaintiff was born on March 8, 1959, and has a sixth-grade education.  He is 5 feet 6 inches tall and he weighs 206 pounds.  Plaintiff lives with his wife and two sons, ages 16 and 7.  He does occasional cleaning, makes the beds and sweeps.  Plaintiff claims that he does not go shopping, but will occasionally drive his wife to the store.  He also claims that he can only walk a couple of blocks, and if he does, it requires a five-minute rest.

Plaintiff was last employed as a laborer in the yard of a trucking company loading and moving trucks.  He continued this work from approximately 1997 to 2002.  As a laborer, the heaviest weight he lifted was 100 pounds.  On average, he was expected to lift 25 pounds.  This job required him to stand and bend down six hours a day, and to lift cartons of miscellaneous freight at least six hours a day.  He was also required to handle, grab or grasp big objects for six hours per day.

Plaintiff alleges that he suffers from Hepatitis C, edema, chronic fatigue, depression, severe pain and swelling of the legs and severe infection.  He claims that in September 1995, these conditions caused him to work fewer hours and by November 1, 2002, he was no longer working.

At Plaintiff's hearing before the ALJ, he testified that he was diagnosed with peripheral neuropathy in both legs and stated that this condition caused his legs and feet to swell.  He also claimed that his legs would get ice cold and numb, and that he had to elevate them in order to get the circulation back into them.  He explained that he would apply Nistration, a topical medication, to his legs so that he would not get any leg infections.  He further claimed to have been diagnosed with varicose veins bilaterally and claimed to have

3

had these surgically stripped twice.  He stated that he was prescribed 40 mg of methadone twice a day for pain.

Plaintiff also claimed that he had been treated with Prozac for depression.  He felt the medication made him feel worse, however, and therefore stopped using it after three months. The record does not indicate that Plaintiff has ever been treated by a psychiatrist or psychologist.

In 1995, Dr. Mark Hoffman of Bayonne, New Jersey, started treating Plaintiff for his complaints of swelling and pain in his legs, and Hepatitis C.  Dr. Mark Hoffman treated Plaintiff with tests, blood work, antibiotics and drugs.  A January 2000 laboratory report shows that Plaintiff tested positive for Hepatitis C.  A March 2000 liver biopsy shows chronic grade I, stage II, Hepatitis C with minimal portal fibrosis and no evidence of necrosis. Beginning in September 2002, Plaintiff started Interferon injections once a week for nine months.  He had to stop these injections because he claimed it caused him facial pain, depression and fatigue.  Plaintiff also complained of pain and fatigue caused by his liver.  Due to the pain he had an ultrasound done, but it did not show anything except fatty tissue.  He does not currently take any medications for his liver.

The record indicates that Plaintiff visited Dr. Mark Hoffman on October 23, 2002, complaining that he had a tender lump on his right leg.  An ultrasound was normal, however, and Dr. Mark Hoffman ruled out deep vein thrombosis.  Dr. Mark Hoffman diagnosed Plaintiff with superficial cellulitis phlebitis.  In a September 13, 2004 report, Dr. Mark Hoffman diagnosed Plaintiff with chronic liver disease, chronic edema, and a brain tumor resection.  Dr. Mark Hoffman opined that Plaintiff was limited to sitting, standing, and

walking for less than two hours during the course of an eight hour workday, that he could rarely lift less than ten pounds, and that he would be incapable of performing even "low stress" jobs.

Beginning in 2003, Dr. Anaka Prakash, also of Bayonne, New Jersey, treated Plaintiff. Dr. Prakash sent Plaintiff for a liver biopsy, and prescribed Peg Intron and Rebetol.  Plaintiff claimed this medication caused tingling in his face, depression, fatigue, and anger.

On December 22, 2003, Dr. Alexander Hoffman conducted a consultative examination on Plaintiff.  The doctor reported that Plaintiff presented with complaints of a history of hepatitis C, maintained on Interferon therapy; a history of intravenous drug abuse; bilateral leg swelling due to varicosities, the right greater than the left; and two surgeries for venous stripping of the leg.  Plaintiff informed Dr. Alexander Hoffman that he had not been hospitalized recently for his varicosities.  Dr. Alexander Hoffman reported that there was no evidence of any skin breakdown or ulceration of his legs.  Upon examining Plaintiff, the doctor found pronounced superficial varicosities of the lower extremities, more on the right; a slight one centimeter difference in size between the right and left leg; and a slight restriction in straight leg raising.

The State Consultative examiner, Gerald A. Figuerelli, Ph.D., conducted a mental status consultative examination on January 19, 2004.  Dr. Figuerelli reported that Plaintiff complained of problems of depression two months after starting Interferon therapy.  Dr. Figuerelli also reported that Plaintiff was taking Clonidine and Seroquel.   Plaintiff told Dr. Figuerelli that he had a history of substance abuse and a five-year history of methadone maintenance.

5

Dr. Figuerelli diagnosed opiod dependence, a history of other multiple psychoactive substance dependence, and a depressive disorder.  Dr. Figuerelli concluded that there was no indication that Plaintiff had a mental impairment that would stop him from being able to perform work related activity.

In May 2005, Dr. Rodrigo Lim of Bayonne, New Jersey, began treating Plaintiff for cluster headaches.  Plaintiff reported to Dr. Lim that he had suffered from these cluster headaches three to four times a week for the last year.  In a May 5, 2005, headache questionnaire, Dr. Lim indicated that Plaintiff experienced headaches one to two times a month that lasted one to five hours, and were triggered by bright lights, stress, and weather changes.  Dr. Lim prescribed 300 mg of Nerontin twice a day and 25 mg of Topamax twice a day.  Plaintiff informed Dr. Lim that he had a limited response to the treatment.  Dr. Lim opined that Plaintiff could not pull, push, carry or lift any weight over two pounds.

A Residual Physical Functional Capacity Assessment form was completed by a state agency medical consultant.  This form allows the reviewer to check boxes setting forth his or her conclusions with regard to a claimant's capacity to perform certain types of tasks.  Based on boxes checked on the form, the consultant concluded that Plaintiff retained the residual functional capacity for a full range of sedentary work.

## II. STANDARD OF REVIEW

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied sub nom. Williams v. Shalala*, 507 U.S. 924 (1993).  "Substantial evidence" means more than "a mere scintilla."  *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.*  The inquiry is not whether the reviewing court would have made

the same determination, but rather whether the Commissioner's conclusion was reasonable.

*Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Some types of evidence will not be

"substantial."  For example,

> [a] single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is overwhelmed by other evidence -
> particularly certain types of evidence (e.g. that offered by treating physicians) - or if it
> really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court, however, does have a duty to review the evidence in its totality.

*See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take

into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*,

972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*,

847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted).  The Commissioner has a

corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with

conflicting evidence, he must adequately explain in the record his reasons for rejecting or

discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987)

(citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held,

access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained

the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Mathews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258 (4th Cir. 1977).  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### A. The Record Must Provide Objective Medical Evidence

Under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., a claimant is required to provide objective medical evidence in order to prove his disability.  42 U.S.C. § 423(d)(5)(A). ("An individual shall not be considered to be under a disability unless she furnishes such medical and other evidence of the existence thereof as the Secretary may require."); *see also* 42 U.S.C. § 1382c(a)(3)(H)(I).  Accordingly, a plaintiff cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms.  He must provide medical findings that show that he has a medically determinable impairment.  *See* 42 U.S.C. § 423(d)(5)(A); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (defining a disabled person as one who is " unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .").

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless "medical signs"or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362

(3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves *constitute* disability").

## B. The Five-Step Analysis for Determining Disability

Plaintiff's eligibility for DIB and SSI is governed by 42 U.S.C. §§ 423 and 1382. A claimant is eligible for DIB and SSI if he meets the disability period requirements of 42 U.S.C. § 416(I), and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person is disabled for these purposes if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since

the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). *See* 20 C.F.R. § 404.1520(d). Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits. *Id*. If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment. *See* 20 C.F.R. § 404.1520(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments." 20 C.F.R. § 404.1520(e). If the claimant is found to be capable of returning to his previous line of work, then he is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(e). Should the claimant be unable to return to his previous work, the analysis proceeds to step five.  To determine the physical exertion requirements of work, jobs are classified as sedentary, light, medium, heavy, and very heavy.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. *See* C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. *Yuckert*, 482 U.S. at 146-

47 n. 5.

### III. THE ALJ'S DECISION DATED AUGUST 16, 2005

After reviewing the medical evidence of record and considering Plaintiff's testimony, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and regulations at any time through the date of the ALJ's decision.

The ALJ determined that Plaintiff met step one of the analysis because he had not engaged in substantial gainful activity since the alleged onset date of the disability. At step two of the analysis, the ALJ found that there was no objective medical evidence establishing a severe impairment regarding depression. The ALJ determined that the evidence did establish the existence of severe impairments involving Hepatitis C, varicosities of the legs, obesity, and drug abuse. The ALJ concluded, however, that Plaintiff's impairments were not severe enough to meet or medically equal any of the impairments listed in 20 C.F.R., Part 404, Appendix 1, Subpart P, Regulations No. 4. Therefore, Plaintiff was not automatically entitled to disability benefits.

The ALJ proceeded to step four of the analysis, which focuses on whether the claimant's residual functional capacity ("RFC") permits him to return to his previous employment. After reviewing the medical evidence and Plaintiff's testimony, the ALJ concluded that Plaintiff retained the RFC to perform a full range of sedentary work. *See* 20 C.F.R. § 404.1567(b). Based upon the medical evidence of record, the ALJ accepted the assessment by the medical expert, Dr. Alexander Hoffman, that Plaintiff had full range of motion in his lumber spine and that he was able to walk on his heels and toes bilaterally. The ALJ also explained that although Dr. Alexander Hoffman was not Plaintiff's treating physician, he found Dr. Alexander

Hoffman's opinion to be more consistent with the objective medical evidence and of more probative value than the conclusions of the treating sources.

The ALJ also found that Plaintiff's subjective complaints of pain and debilitation were not entirely credible.  Specifically, the ALJ stated, "while I do not totally dismiss the claimant's complaints of discomfort, I do find that his allegations of totally disabling pain and limitation are far in excess of what could be expected from his medical condition, the weight of the medical evidence, and his activities of daily living."  (R. 16). The ALJ found that although Plaintiff complained of pain, Plaintiff was still able to drive a car, make the bed, wash the dishes, sweep the floor, lift and carry between five and ten pounds, and ensure that his children got off to school.  (R. 16).

Based upon Plaintiff's RFC to perform a full range of sedentary work, the ALJ then analyzed whether Plaintiff was capable of performing any of his "past relevant work" prior to November 1, 2002.  *See* 20 C.F.R. § 404.1565.  Plaintiff had past relevant work as a truck loader, where he lifted and carried up to sixty pounds, and as an order picker, where he lifted and carried one hundred pounds.  The ALJ concluded, based upon his findings regarding the claimant's residual functional capacity for sedentary work, that the claimant was not capable of performing his past relevant work.

Based upon his findings at step four, the ALJ proceeded to step five.  The ALJ concluded that a finding of "not disabled" would be appropriate based upon the application of the medical-vocational guidelines contained in 20 C.F.R. Part 404, Appendix 2, Subpart P.  The ALJ noted that because the evidence supports a finding that the claimant can perform the demands of the full range of sedentary work, a finding of "not disabled" is directed by Medical-Vocational Rules

12

201.24 (younger individuals ages 18-44, limited or less educated, unskilled work experience)

and 201.18 (ages 45-49).

## IV. DISCUSSION

Plaintiff raises the following arguments challenging the decisions of the ALJ and the

Appeals Council:

1. The ALJ erred when it found that Plaintiff does not meet a mental impairment under the Medical Listing 12.04 of Appendix 1, Subpart P, Regulations No. 4.
2. The ALJ erred when it determined that Plaintiff retained the residual functional capacity to perform a full range of sedentary work.
3. The ALJ erred in his mechanical application of the Medical-Vocational Guidelines given Plaintiff's non-exertional impairments.
4. A medical report submitted after the ALJ's decision necessitates a remand for further consideration.

The Commissioner contends that the ALJ's decision is supported by substantial evidence and

therefore should be affirmed.

## A.  The ALJ Properly Determined that Plaintiff's Mental Impairment Did Not Meet or Equal a Listing

Plaintiff argues that the ALJ concluded that he met the medical listing of 12.04A1 of

Appendix 1, Subpart P, Regulations No. 4, and therefore, he is per se entitled to benefits.

Plaintiff is incorrect.  Rather, to satisfy the criteria of a listed impairment, the condition

complained of "must meet all of the specified medical criteria . . . [a]n impairment that manifests

only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493

U.S. 521, 531 (1990) (emphasis in original).

"The required level of severity for [an affective disorder] is met when the requirements

in both A and B are satisfied, or when the requirements in C are satisfied."  20 C.F.R. Part. 404,

Appendix 1, Subpart P, 12.04.  It is reasonable to conclude that the ALJ found that Plaintiff met

subsection A of 12.04, but not subsections B or C.

In his decision, the ALJ stated that Plaintiff met the requirements for 12.04A.  The ALJ found that Plaintiff suffered from an affective disorder, specifically, a depressive syndrome.  (R. 15).  The ALJ then implied, however, that Plaintiff did not meet the requirements of subsection B.  The requirements for subsection B are that the disease must result in at least two of the following:

> 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part. 404, Appendix 1, Subpart P, 12.04(b).

The ALJ stated that, "with respect to the applicable B criteria of such listing, the evidence establishes that the claimant experiences functional limitations including: <u>slight</u> restrictions of activities of daily living; <u>slight</u> difficulties in maintaining social functioning; <u>slight</u> deficiencies of concentration, persistence or pace; and no episodes of decompensation." (R. 17) (emphasis added).  Thus, the ALJ implicitly stated that Plaintiff did not meet the requirements of subsection B.  The ALJ then explicitly stated that Plaintiff did not meet the requirements of subsection C.  (R. 17).

Substantial evidence supports the ALJ's determination that Plaintiff's mental impairment resulted in only slight restrictions in his activities.  The ALJ based his conclusions on Plaintiff's own testimony, Dr. Figurelli's examination of Plaintiff, and a State agency physician, Dr. Joseph Michel's assessment.  For example, Plaintiff testified at the hearing that he was still able to clean his house, make the beds, sweep, read the newspaper, drive to the store and get his children off

to school.  Further, Dr. Figurelli determined that Plaintiff's limitations were primarily attributed

to his medical condition and drug dependence, and secondarily to psycho social stressors (R.

107).  Finally, during his independent examination of Plaintiff, Dr. Michel found that Plaintiff

was not significantly limited by depression.  (R. 109-113).

## B.  Substantial Evidence Supports the ALJ's Finding that Plaintiff Retained the RFC for the Full Range of Sedentary Work

      Plaintiff argues that the ALJ erred in finding that Plaintiff retains a residual functional

capacity that allows him to perform the full range of sedentary work because (1) the ALJ failed

to give significant weight to the opinions of Plaintiff's treating physicians; (2) the ALJ failed to

consider Plaintiff's ailments in combination; and (3) the ALJ failed to address any effects his

medication might have on his ability to function.  The Court will address each of these points in

turn.

      First, the Court rejects Plaintiff's contention that the ALJ failed to give adequate weight

to the treating physicians' opinions.  Specifically in this regard, Plaintiff argues that the ALJ did

not explain his rejection of Dr. Mark Hoffman's RFC assessment.  However, as the ALJ noted,

Dr. Mark Hoffman's restrictive assessment was not supported by either his own clinic notes, or

by other evidence in the record.  The only positive findings reported by Dr. Mark Hoffman, after

Plaintiff's alleged onset date, were some superficial phlebitis and slight edema in Plaintiff's legs.

Further, Dr. Mark Hoffman's notes show that Plaintiff began feeling better and was tolerating

medications for hepatitis C.  Both an ultrasound of Plaintiff's legs and CAT scan of Plaintiff's

head were negative.  Indeed, Dr. Mark Hoffman's opinion that Plaintiff could sit, stand, and

walk less than two hours, and rarely lift ten pounds, or his statement that Plaintiff was incapable

15

of even "low stress jobs" is simply not supported by the evidence.

Plaintiff also argues that the ALJ inappropriately disregarded Dr. Lim's opinion that Plaintiff was unable to lift anything over two pounds. However, Dr. Lim failed to submit any clinic notes supporting the limitations that he assessed in his headache report. He also failed to include in his reports the length and frequency of his treatment with Plaintiff. Further, his assessments appear to be based solely on Plaintiff's subject complaints. The Commissioner's regulations require that medical opinions must be well supported by medically acceptable clinical and laboratory diagnostic techniques in order to be given controlling weight. 20 C.F.R. §§ 404.1526(f), 416.927(f). The ALJ properly found that neither Dr. Mark Hoffman's nor Dr. Lim's opinions were entitled to significant weight because neither opinions were well-supported by objective medical evidence.

Morever, the objective medical evidence refutes Plaintiff's alleged functional limitations. The consultative examiner, Dr. Alexander Hoffman, found that range of motion in Plaintiff's lumbar spine was intact. Dr. Alexander Hoffman also found that he was able to walk on his heels and toes bilaterally. According to Dr. Alexander Hoffman's records, Plaintiff was neurologically intact and his range of motion was full in his upper extremities. Plaintiff's skin demonstrated no evidence of ulceration or brawny edema. Although Plaintiff had varicose veins, ultrasound studies of his legs were normal. Plaintiff's physical examinations revealed no clinical findings. Thus, Plaintiff's claims that he could lift only five pounds, and that he had to alternate between sitting, standing and walking every twenty minutes were not supported by the record.

The only evidence Plaintiff puts forth to support his claims that he is unable to perform

16

even sedentary work are his subjective complaints that he is in pain when he performs daily functions.  While complaints of pain not fully supported by objective medical evidence should be considered and not discounted without contrary medical evidence, such complaints do not have to be fully credited.  *See Chrupcala v. Heckler*, 829 F.3d 1269 (3d Cir. 1987).  Rather, the ALJ is entitled to evaluate the credibility of Plaintiff's complaints and to reject such subjective complaints if they are in conflict with the objective medical evidence.  The ALJ appropriately did so here.

In addition to citing the objective medical evidence described above, the ALJ noted that Plaintiff's testimony of his current daily activities supports the finding that Plaintiff can engage in the full range of sedentary work.  Plaintiff testified that he occasionally cleans his house, makes the beds, sweeps, reads the newspaper, and drives to the store.  He also testified that he was able to lift and carry between five and ten pounds and help his children get ready for school.  Based on the objective medical evidence and Plaintiff's testimony regarding his daily activities, the ALJ drew the reasonable conclusion that Plaintiff's alleged pain was less debilitating than he described and that he could perform sedentary work.

Plaintiff also argues that the ALJ failed to address the totality of his diseases.  Even if several ailments are not disabling in and of themselves, they may be disabling when taken in combination. *Wier on Behalf of Wier v. Heckler*, 744 F.2d 955, 963.  However, the ALJ did in fact consider all of the relevant evidence in deciding that Plaintiff's impairments were not so severe in combination as to warrant a finding of disability, and did not meet or equal any Listed impairment.  The ALJ evaluated the objective findings, stated above, and found that "[Plaintiff's] medically determinable impairments do not meet or medically equal any of the

17

listed impairments in Appendix 1, Subpart P, Regulations No. 4." (R. 19). The ALJ considered the impairments in their totality and concluded that a finding of disabled was not supported. Specifically, the ALJ considered and discussed all the medical evidence that was credible, supported by clinical findings and relevant to Plaintiff's impairments. Thus, the ALJ fulfilled his obligations to review Plaintiff's impairments in combination.

Lastly, Plaintiff argues that the ALJ did not address the effects, if any, his medication might have on his ability to function. However, in his assessment of Plaintiff's credibility the ALJ did consider this, and found Plaintiff to be generally unreliable. Further, Plaintiff testified at the hearing that he was no longer taking any medication. Thus, even if the ALJ did not evaluate the effects of medications on Plaintiff's ability to perform sedentary work, he was fully justified. The ALJ was responsible for evaluating all evidence presented during the hearing, not speculative evidence of future conditions.

Accordingly, based on the foregoing, the ALJ's determination that Plaintiff could perform the full range of sedentary work is supported by substantial evidence.

**C. Application of the Medical-Vocational Guidelines**

Plaintiff claims that the Commissioner erred in mechanically relying on the Medical-Vocational Guidelines, or "grids," and specifically Medical-Vocational Rule 201.28, to reach an unfavorable decision in his case. Plaintiff asserts that because he has the non-exertional impairments of depression and pain, the ALJ was required to consult a vocational expert before determining that he was not disabled. The Court disagrees.

In rendering his decision, the ALJ explicitly found that Plaintiff did not suffer from any significant non-exertional limitations that diminished his residual functional capacity. This

18

finding was supported by substantial evidence.  As noted above, Dr. Mark Hoffman's restrictive assessment was not supported by either his own clinic notes, or by other evidence in the record. The only positive findings reported by Dr. Mark Hoffman, after Plaintiff's alleged onset date, were some superficial phlebitis and slight edema in Plaintiff's legs.  Dr. Mark Hoffman's notes show that Plaintiff began feeling better and was tolerating medications for hepatitis C.  An ultrasound of Plaintiff's legs was negative as was a CAT scan of his head.  The ALJ appropriately found that such evidence did not support Dr. Mark Hoffman's opinion that Plaintiff could sit, stand, and walk less than two hours, and rarely lift ten pounds, or his statement that Plaintiff was incapable of even "low stress jobs."

Moreover, Dr. Lim failed to submit any clinic notes supporting the limitations assessed in his headache report.  He failed to report the length and frequency of his treatment with Plaintiff.  He also appears to have based his conclusions solely on Plaintiff's subject complaints. The ALJ specifically indicated that he did not give great weight to Plaintiff's subjective complaints of pain because they were not supported by the objective medical and other evidence in the record.

Thus, the ALJ's determination that Plaintiff had no significant non-exertional limitations and subsequent mechanical application of the Medical-Vocational Guidelines was proper.  The ALJ was not required to consult a vocational expert, and remand is therefore not warranted on this basis. *See Caruso v. Comm'r of Social Security*, No. 03-2709, 99 Fed. Appx. 376, 2004 WL 1147065, at \*4 (3d Cir. May 19, 2004) (rejecting Plaintiff's argument that the ALJ improperly relied on the guidelines where the objective medical evidence and claimant's own testimony did not support her alleged non-exertional impairments); *Cartenega*, 2002 WL

19

334115, at *2 (holding that ALJ's application of the guidelines without consulting vocational expert was reasonable where the objective medical evidence failed to support Plaintiff's non-exertional limitations).

**D. The Evidence Submitted to the Appeals Council Does Not Require Remand for Further Consideration**

      Plaintiff argues that Dr. Lim's letter, dated September 21, 2005, and submitted to the Appeals Council after the ALJ issued his written decision, presents new and material evidence which requires remand for further administrative consideration. After noting that the additional evidence did not provide a basis for changing the ALJ's decision, the Appeals Council declined to grant review.

      For a "new evidence" remand to be necessary, Plaintiff's new evidence must satisfy three requirements. *Szuback v. Secretary*, 745 F.2d 831, 833 (3d Cir. 1984). First, the evidence must be new. *Id.* at 833. New evidence means that it is not merely cumulative of what is already in the record. *Id.* Second, the evidence must be material, meaning it must be relevant and probative. *Id.* Also, there must be a "reasonable possibility" that the new evidence would result in a different outcome. *Id.* Finally, the claimant must show good cause for why the evidence was not submitted at the hearing. *Id.*

      Plaintiff has failed to show that Dr. Lim's September 2005 letter is new evidence. Plaintiff states, in his own brief, "although the date of the report postdates the hearing date, the report reveals the same diagnoses as provided by Dr. Lim in his report of 5-15-05." (Plaintiff's Brief at 33.) Dr. Lim's September 2005 letter restates his opinion, already articulated in his May 2005 headache questionnaire, that Plaintiff's residual functional capacity is so minimal as

to render him disabled.  Thus, the September 2005 opinion is cumulative of evidence already contained in the record and evaluated by the ALJ.  Secondly, Plaintiff has failed to show that Dr. Lim's report is material because he has failed to show what period of time the letter refers to.  If the letter refers to the period after the ALJ's decision, then it is not material.  Alternatively, even if it refers to a period before the ALJ's decision, it is still not relevant because it is merely restating what has already been stated in the May 2005 headache questionnaire, which was already considered by the ALJ.  Finally, Plaintiff has failed to show good cause for not submitting the evidence at the hearing.  Plaintiff argues that the evidence could not be submitted because it was acquired after the hearing, but Plaintiff has failed to submitted any evidence of why the letter was unavailable.  Because Plaintiff has not satisfied the necessary requirements to justify a "new evidence" remand, the Court will not remand on this basis.

**IV. CONCLUSION**

For the foregoing reasons, the Court concludes that the ALJ's findings are supported by substantial evidence, and thus affirms the Commissioner's final decision denying benefits for Plaintiff.  An appropriate order accompanies this opinion.

DATED: July 26, 2007

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.